[Civ. No. 13166. Second Dist., Div. One. May 28, 1942.]

A. CAMINETTI, JR., as Insurance Commissioner, etc., Respondent, v. NATIONAL GUARANTY LIFE COMPANY (a Corporation), Appellant.

Sherman & Sherman, Robert W. Kenny, Morris E. Cohn and W. B. Thomas for Appellant.

Earl Warren, Attorney General, and John L. Nourse, Deputy Attorney General, for Respondent.

DRAPEAU, J. pro tem. — On this appeal the points involved and discussed are identical with those in *A. Caminetti, Jr., Insurance Commissioner of the State of California* v. *State Mutual Life Insurance Company, Civil No. 13165, ante,* p. 321 [126 P. (2d) 165]. Therefore, it is unnecessary to again repeat what has been said in that case.

The same individual who was executive vice-president of the mutual insurance company in the case of Civil No. 13165 was president of the mutual insurance company in this case. He secured and controlled the proxies in the corporation in the same manner. By his direction, the board of directors voted him a salary of $30,000 a year. This was over 7 per cent of the net premium income of the company and over 6 per cent of its income from all sources. It was the payment of this salary which the Insurance Commissioner asserts as the principal reason for the take-over of the company.

In this case appears a clear illustration of a practice followed by the president of this company of buying and selling the right to control and manage mutual insurance companies. This right to manage was dealt with as men deal with chattels, real or personal.

"Q. (Under cross-examination) : Did you find out who had control during that day, or any part of the next, and before you actually agreed to go into the company?

"A. (By Charles W. Harrison, president) : No. I was told that Mr. B. D. Malone was the controlling factor. It seems that he and W. D. Dilbeck were working together. . . . Well, I was waiting for the board of directors to meet; they were supposed to meet at a certain time, and I asked Mr. Malone what was causing the delay of the meeting, and he told me that he had run into a snag, or some similar remark like that. . . . He said that Mr. Baillie, who had been working on some plan with him regarding the National Guaranty Life, had agreed for his fee in the matter to be less on his general agency contract, but Mr. Malone had now told him since he was getting other people into the picture to try to rehabilitate the company, that Mr. Baillie didn't feel like stepping out of the picture until he was reimbursed for his trouble.

"Q. Mr. Baillie, as I understood your testimony yesterday, was the attorney for the company?

"A. No. He was an attorney. I didn't even know at that time that Baillie was an attorney.

"Q. He was not an officer of the company?

"A. No. . . .

"Q. You had had some experience with insurance companies of this type, had you not?

"A. Oh, yes.

"Q. You knew if you had sufficient proxy votes you could elect or select your own board of directors didn't you?

"A. Yes.

"Q. You knew if you did that that board of directors would elect the officers you designated, didn't you?

"A. Yes. . . .

"Q. Did you know at the time, that is on or about June 23rd or June 24th, 1936, that Mr. Baillie was in reality the financial editor of the Herald-Express?

"A. I knew it on the 24th. . . .

"Q. Did Mr. Malone ever go to work for the corporation as a general agent?

"A. No.

"Q. Did he ever pay back the $5,000.00?

"A. No.

"Q. Or any portion of it?

"A. No, sir.

"Q. Have you ever made a demand on Mr. Malone for the $5,000.00?

"A. No, sir.

"Q. Did you ever ask him for it?

"A. No, sir.

"Q. You know, don't you, or you knew at the time that Mr. Malone was going to give this $5,000.00 to Mr. Baillie?

"A. Yes, he so told me that he had to raise $5,000.00. That is correct."

For the same reasons as set forth at length in Civil No. 13165, the order appealed from, denying the motion to vacate the order appointing a conservator, is affirmed.

York, P. J., and Doran, J., concurred.